1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

11  ROCKY NEIL BOICE, JR.,                      )
                                               )
12              Petitioner,                     )          3:08-cv-00199-ECR-WGC
                                               )
13  vs.                                         )
                                               )          **ORDER**
14  NSP, WARDEN BILL DONAT, *et al.,*           )
                                               )
15              Respondents.                    )
    _____/

16

17          This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in which petitioner, a

18  state prisoner, is represented by counsel.  This case proceeds on the first amended petition filed

19  December 19, 2008.  (ECF No. 20.)  Respondents have filed an answer (ECF No. 73), and petitioner

20  has filed a reply (ECF No. 77).[1]

21  **I. Background and Procedural History**

22          This case stems from an altercation at the Roundhouse Inn in Carson City, Nevada that ultimately

23  led to the death of Samuel Resendiz.  Following a jury trial, petitioner was found guilty of second-degree

24

25

26          _____

        [1]  Respondents move to file an answer in excess of thirty pages.  (ECF No. 74.)  The court grants
    this motion and considers the answer in its entirety.

1   felony murder with use of a deadly weapon,[2] conspiracy to commit battery with use of a deadly weapon,

2   and principal to battery with use of a deadly weapon. (Exhibits to First Am. Pet. Ex. 247, 262, ECF Nos.

3   30, 31.)[3]   For the second-degree murder with use of a deadly weapon conviction, petitioner was

4   sentenced to a prison term of ten to twenty-five years, with a consecutive term of ten to twenty-five years

5   for the deadly weapon enhancement. (*Id*.) For the principal to battery with use of a deadly weapon

6   conviction, petitioner was sentenced to a prison term of two to ten years, to run concurrently with the

7   sentence for the second-degree murder with use of a deadly weapon conviction. (*Id*.) For the conspiracy

8   to commit battery with use of a deadly weapon conviction, petitioner was sentenced to serve a one-year

9   term in the Carson City Jail, to run concurrently with the sentences for the other two counts. (*Id*.)

10   Petitioner filed a direct appeal from his convictions. (*Id.* Ex. 264.) The Nevada Supreme Court

11   issued an order of affirmance on July 1, 2004. (*Id*. Ex. 277.)

12   Petitioner filed a state post-conviction petition in the First Judicial District Court for the State

13   of Nevada. (*Id*. Ex. 283, ECF No. 32.) After holding an evidentiary hearing, the court issued an order

14   on December 21, 2006, denying the petition. (*Id.* Ex. 299, ECF No. 33.) Petitioner appealed, and the

15   Nevada Supreme Court issued an order of affirmance on September 21, 2007. (*Id*. Ex. 300, Ex. 308.)

16   Petitioner filed a petition for rehearing, and on November 14, 2007, the Nevada Supreme Court issued

17   an order denying rehearing but clarifying its decision. (*Id*. Ex. 311, Ex. 312.)

18   Petitioner, appearing *pro se*, dispatched his petition for writ of habeas corpus to this court on

19   April 11, 2008, raising twenty-seven claims. (ECF No. 1.) This court appointed the Federal Defender's

20   Officer to represent petitioner on May 22, 2008. (ECF No. 8.) Counsel filed a first amended petition

21   on December 19, 2008. (ECF No. 20.) Subsequently, respondents moved to dismiss several grounds

22   in the first amended petition. (ECF No. 46.) In an order issued March 10, 2010, the court dismissed

23

24   [2]  Alhtough the judgment of conviction states that petitioner was convicted of second degree murder (Exhibits to First Am. Pet. Ex. 247), the verdict forms show that the jury found petitioner guilty

25   of second-degree *felony* murder. (*Id*. Ex. 262.)

26   [3]  The exhibits referenced in this order are found in the court's record at ECF Nos. 21-33, which were filed with petitioner's first amended petition.

grounds one(b) and three© as time barred and concluded that grounds eight, nine, and ten were unexhausted. (ECF No. 65.)  Petitioner moved to dismiss and abandon the unexhausted grounds (ECF Nos. 66, 67), and the court ordered the case to proceed without grounds one(b), three©, eight, nine, and ten. (ECF No. 68).

## II.      Federal Habeas Corpus Standards

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d), provides the legal standard for the court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002).  A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams,* 529 U.S. at 413).  The

"unreasonable application" clause requires the state court decision to be more than merely incorrect or erroneous; the state court's application of clearly established federal law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

In determining whether a state court decision is contrary to, or an unreasonable application of federal law, this court looks to the state courts' last reasoned decision. *See Ylst v.Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001). Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III. Discussion

### A. Ground One

In ground one(a), petitioner claims that the second-degree felony murder conviction cannot be sustained because the jury acquitted him on the principal to burglary charge and that insufficient evidence supports the second-degree murder conviction. Petitioner argues that his second-degree murder conviction and sentence of twenty years in prison is in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.[4]

Respondents argue that petitioner is not entitled to relief because the underlying felony for the second-degree murder charge was battery with a deadly weapon, not burglary, and that petitioner's own testimony shows he committed the crime of battery with a deadly weapon.

#### 1. Legal Standard

When a habeas petitioner challenges the sufficiency of evidence to support his conviction, the court reviews the record to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond

---

[4] In ground one(b), petitioner claims that the State unconstitutionally changed the theory of liability from principal to second-degree murder to principal to second-degree felony murder without charging him with that offense. The court dismissed this portion of ground one because it concluded that it did not relate back to the original petition and was, therefore, time barred. (ECF No. 65.)

1    a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Jones v. Wood*, 207 F.3d 557, 563

2    (9th Cir. 2000).  The court must assume that the jury resolved any evidentiary conflicts in favor of the

3    prosecution, and the court must defer to that resolution.  *Jackson*, 443 U.S. at 326; *Schell v. Witek*, 218

4    F.3d 1017, 1023 (9th Cir. 2000) (*en banc*).  The credibility of witnesses is beyond the scope of the

5    court's review of the sufficiency of the evidence.  *See Schlup v. Delo*, 513 U.S. 298, 330 (1995).  Under

6    the *Jackson* standard, the prosecution has no obligation to rule out every hypothesis except guilt.  *Wright*

7    *v. West*, 505 U.S. 277, 296 (1992) (plurality opinion); *Jackson*, 443 U.S. at 326;  *Schell*, 218 F.3d at

8    1023.  *Jackson* presents "a high standard" to habeas petitioners claiming insufficiency of evidence.

9    *Jones*, 207 F.3d at 563.

10              2.  Discussion

11         In count II of the second amended information, the State charged petitioner with principal to

12   second-degree murder with the use of a deadly weapon.  (Exhibits to First Am. Pet. Ex. 237.)  Although

13   the State never specifically charged petitioner with second-degree *felony* murder, the jury was instructed

14   on that theory, and ultimately, convicted petitioner pursuant to a theory of second-degree *felony* murder.

15   (*Id*. Ex. 248, Jury Instruction Nos. 33-38, Ex. 247.)   As indicated previously, petitioner's claim

16   challenging the State's change in theory without specifically charging him with second-degree felony

17   murder is not before the court because this claim is time barred.  The court's inquiry is limited to

18   petitioner's argument that insufficient evidence supports the second-degree felony murder conviction.

19         On August 22, 1998, petitioner and a group of his friends traveled to the Roundhouse Inn in

20   Carson City in order to confront a member of a gang known as the Eastside Tokers who went by the

21   name of "Muppet."  Although petitioner states that he only intended on talking with Muppet about

22   Muppet hitting his cousin in the face earlier in the evening at a party, petitioner and several members

23   of petitioner's group armed themselves before arriving at the Inn because of the Tokers' reputation for

24   carrying guns and because they believed around thirty Tokers were at the Inn.  Petitioner armed himself

25   with a wooden stick approximately eighteen to twenty inches long and about one inch thick.  Three

26   others armed themselves with either a metal chain, a rusted bar, or a baseball bat.  Unbeknownst to the

1   group, Muppet had left the Inn before they arrived.  Upon arriving at the Inn, petitioner's cousin led the

2   group to the room where the party had taken place and knocked on the door.  A woman opened the door

3   to a darkened room.  Petitioner did not see how many people were the room, but because of his cousin's

4   earlier statements he believed the room was full of Tokers.  While he was still at the room's threshold,

5   he heard an unidentified person say, "F - - - you, you f - - -, I'll shoot you.  I'll shoot all of you."  After

6   hearing this threat and seeing the speaker reach back behind himself, petitioner entered the room and

7   struck the person three times with the wooden stick because he believed the person had a gun.  Petitioner

8   testified that he did not run out of the room because the rest of his group was coming in behind him and

9   he didn't want anybody else to get shot.  The person petitioner struck was Samuel Resendiz.

10   The woman who opened the door to the room, Carolee Simpson, testified that another Toker,

11   Carlos Lainez, was asleep on an adjacent bed when petitioner's group entered the room.  She testified

12   that other members of the group began hitting Lainez.  Lainez escaped severe injuries.

13   After petitioner struck Resendiz for the third time, he heard Simpson scream that Resendiz was

14   not "the one," which meant that he was not Muppet.  Upon hearing he had confronted the wrong person,

15   petitioner ran out of the room yelling, "It's not the one" and "Cops, cops, cops" in order to motivate

16   people to leave the room.  At trial, a member of petitioner's group, Julian Contreras, admitted to hitting

17   Resendiz three to four times with a baseball bat after petitioner had hit Resendiz.  Contreras also stated

18   that after petitioner left the room, and as Contreras was leaving, another member of the group

19   approached Resendiz with a rusted bar.  Simpson testified that several others also hit Resendiz at

20   different times.

21   Resendiz died from his wounds.  The autopsy showed that Resendiz suffered blunt force injuries

22   to the head, trunk, and extremities, as well as lacerations to the right side of his head.  The cause of death

23   was skull fracture due to blunt force injury of the head. (Exhibits to First Am. Pet. Ex. 239 at 56, 63.)

24   The forensic pathologist determined that a baseball bat could have caused the fatal injury but that a

25   wooden stick was unlikely to have caused such an impact.  (*Id*. Ex. 239 at 80-81.)

26   Petitioner argues that by acquitting him of the burglary charge, the jury concluded that the State

1  failed to prove that he intended to commit an assault or battery when he entered the hotel room.

2  Additionally, petitioner argues that the evidence taken as a whole fails to demonstrate he was responsible

3  for Resendiz's death because the forensic pathologist concluded that a baseball bat, rather than a wooden

4  stick, was the cause of the fatal injury.

5       In addressing these arguments, the Nevada Supreme Court ruled as follows:

6       Boice contends that the second degree felony murder conviction cannot stand
   because the jury acquitted him of the burglary and battery with use of a deadly
7  weapon is not one of the felonies NRS 200.030 enumerates as grounds for a
   felony murder conviction. This argument is inapposite for two reasons. First,
8  the predicate felony for Boice's conviction was battery with a deadly weapon
   upon Resendiz not burglary. Thus, the burglary acquittal is inconsequential.
9  Second, the felonies NRS 200.030 enumerates relate to first degree felony
   murder; the jury convicted Boice of second degree felony murder. The second
10 degree felony murder rule applies if the felony is one which is inherently
   dangerous in the abstract and there is an immediate and direct causal
11 connection between the defendants's actions and the victim's death. Because
   the battery with use of a deadly weapon was inherently dangerous, the
12 application of the second degree felony murder rule to the case at bar was
   proper.

13

14 (*Id*. Ex. 277 at 11-12) (footnotes omitted).  In addressing the import of the jury's burglary charge

15 acquittal, the Nevada Supreme Court concluded that "inconsistent jury verdicts may result from the

16 jury's clemency and do not constitute grounds for reversal." (*Id*. Ex. 277 at 16.)  In rejecting petitioner's

17 claim that the evidence failed to demonstrate that he was responsible for Resendiz's death, the Nevada

18 Supreme Court held as follows:

19      Although Dr. Raven, the forensic pathologist who performed Resendiz'
   autopsy, testified that the wooden stick Boice allegedly carried unlikely caused
20 Resendiz' death, ample evidence supports Boice's conviction. The jury
   convicted Boice as a principal to second degree felony murder; all the jury had
21 to find was that Boice aided, abetted or encouraged another in murdering
   Resendiz. As our prior analysis evidences, the jury could reasonably draw
22 such a conclusion. Boice admitted to personally striking Resendiz three times.
   Although other defendants also hit Resendiz, a "principal" conviction does not
23 require that Boice delivered the fatal blow. There was sufficient evidence to
   support the conviction.

24 (*Id*. Ex. 277 at 17.)

25      Under Nevada law, to prove second-degree felony murder, the prosecution must show: (1) the

26 predicate felony is inherently dangerous, where death or injury is a directly foreseeable consequence of

7

1  the illegal act; and (2) an immediate and direct causal relationship between the actions of the defendant

2  and the victim's death that is "without the intervention of some other source or agency." *Ramirez v.*

3  *State*, 235 P.3d 619, 622 (Nev. 2010) (citations omitted). "The question of whether a felony is inherently

4  dangerous, where death or injury is a directly foreseeable consequence of the illegal act, is a question

5  for the jury to determine under the facts and circumstances of each case." *Id.* at 622 n.2. Under Nev.

6  Rev. Stat. § 195.020, a principal is a person who directly commits the act constituting the offense, or

7  aids, abets, or encourages another to commit a felony, gross misdemeanor, or misdemeanor.

8      At trial, petitioner testified that he told his friends to "back [him] up in case anything did go on"

9  at the Inn because he "didn't want to be jumped by all these guys." (*Id.* Ex. 239 at 22.) Petitioner

10  testified that after arriving at the Inn, he entered the room first and hit Resendiz three times. (*Id.* Ex. 239

11  at 27.) Petitioner testified that he first struck Resendiz in the forehead as hard as he could with both

12  hands. (*Id.* Ex. 239 at 64, 65.) Petitioner then struck Resendiz in the shoulder and then in his arm. (*Id.*

13  Ex. 239 at 67, 68.) After petitioner took these actions, others in his group entered the room and struck

14  Resendiz with their implements. Although the forensic pathologist testified that it was unlikely that

15  petitioner's blows caused Resendiz's death, one of the blows inflicted by members of petitioner's group

16  was a fatal blow. Under Nevada law, a "principal," such as petitioner, includes not only the person who

17  directly commits the act constituting the offense but also one who aids, abets, or encourages the act.

18  Petitioner told his friends that he wanted them to back him up. By his actions in leading the charge into

19  the room and commencing the attack on Resendiz, a rational jury could have concluded that petitioner

20  aided, abetted, or encouraged the additional blows inflicted on Resendiz by petitioner's friends. In

21  reaching such a conclusion, a rational jury could have concluded that the battery with use of a deadly

22  weapon to which petitioner aided, abetted, or encouraged was an inherently dangerous act that

23  immediately and directly caused Resendiz's death. In sum, in viewing the evidence in the light most

24  favorable to the prosecution, a rational jury could have found petitioner guilty of second-degree felony

25  murder.

26      The Nevada Supreme Court cited to and applied the correct federal standard, *Jackson v. Virginia*,

1   433 U.S. 307 (1979), in reviewing petitioner's insufficiency of the evidence claim.  (Exhibits to First

2   Am. Pet. Ex. 277 at 15 n. 22).  The factual findings of the state court are presumed correct.  28 U.S.C.

3   § 2254(e)(1).  Petitioner has failed to meet his burden of proving that the state court's ruling was

4   contrary to, or involved an unreasonable application of, clearly established federal law, as determined

5   by the United States Supreme Court, or that the ruling was based on an unreasonable determination of

6   the facts in light of the evidence presented in the state court proceeding.  This court will deny habeas

7   relief as to ground one.

8        **B.  Ground Two**

9        In ground two, petitioner claims that the trial court violated his rights under the Sixth and

10  Fourteenth Amendments to the United States Constitution when it admitted hearsay statements of non-

11  testifying co-defendants at trial.  Petitioner argues that the trial court's admission of testimonial hearsay

12  statements made by co-defendants at Voltaire Canyon after the incident at the Inn violated his rights

13  under the Confrontation Clause because the statements were not subject to cross-examination.

14       Respondents argue that petitioner is not entitled to relief on this ground because although the

15  Nevada Supreme Court found error in admitting the statements, it concluded that the error was harmless.

16       In addressing the merits of this claim, the court assumes without deciding that the trial court's

17  admission of the testimony in question was error and focuses its inquiry on whether such an  error was

18  harmless.

19            1.  Legal Standard

20       When a habeas petitioner establishes he was denied his Sixth Amendment right to cross-

21  examination, the court must evaluate whether "that error was harmless assuming that the damaging

22  potential of the precluded cross-examination would otherwise have been fully realized."  *Fowler v.*

23  *Sacramento County Sheriff's Dep't*, 421 F.3d 1027, 1041 (9th Cir. 2005) (internal quotations, alterations,

24  and citations omitted).  "In a federal habeas proceeding, constitutional error is harmless unless it had

25  'substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* (citing *DePetris v.*

26  *Kuykendall*, 239 F.3d 1057, 1061 (9th Cir. 2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638

1   (1993))) (internal quotations omitted).  Relevant factors to the court's analysis include "the importance

2   of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence

3   or absence of evidence corroborating or contradicting the testimony of the witness on material points,

4   the extent of cross-examination otherwise permitted, and, of course, the overall strength of the

5   prosecution's case." *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986).

6                    2.  Discussion

7          After the altercation at the Inn, petitioner and his group retreated to Voltaire Canyon.  Alejandro

8   Avila and David Moyle testified that petitioner's cousin, Jessica Evans, was thanking everyone and

9   hugging them for what had happened at the Inn.  (Exhibits to First Am. Pet. Ex. 226 at 167-68, Ex. 227

10  at 26, 33)  Moyle testified as to what others had said about their roles in the attack.  (*Id*. Ex. 227 at 27-

11  31.)  Wayne Roberts testified that Evans was thanking everyone at Voltaire Canyon after the altercation

12  and stated "that's my cousin [Boice]" and that she was happy they beat up this guy for hitting her.  (*Id*.

13  Ex. 229 at 10.)  Roberts also testified that either petitioner or two of the other males stated they were

14  "swatting at Mexicans."  (*Id*. Ex. 229 at 17-18.)

15         In addressing whether the trial court's admission of these statements violated petitioner's Sixth

16  Amendment rights, the Nevada Supreme Court held:

17              We need not decide whether the district court's decision to admit
        contradicts the Crawford holding because we conclude that even if the district
18      court erred, the error was harmless.  For example, Avila and Moyle testified
        that after the altercation, Evans was thanking and hugging everyone.  Evans'
19      behavior at Voltaire Canyon has no bearing on Boice's state of mind before
        or during the altercation.  The district court also admitted statements that
20      someone said they used a metal rod to swing at a guy's head, that there was
        a sense of avenging at the canyon, that Clint Malone was 'poking' Resendiz
21      and that people were "pumped up."  Moyle testified that Jaron Malone stated
        that he was the last guy in the room and he hit Resendiz with his fist,
22      knocking him off the bed.  Moyle also stated that Frederick Fred and Dutchy
        explained how they were trying to "go after" the guys inside the motel room.
                The record contains ample testimony to sustain Boice's conviction,
23      even without these statements.  Evidence at trial established that the group
        anticipated a fight because they were upset about Evans' injuries and fed up
24      with the Tokers.  Moyle stated that "people were getting angry and riled up
        at about what happened."  Upon arrival at the motel, some of the Native
25      Americans were taking off their shirts in preparation for a fight and were
        hitting themselves on the chest.  Testimony also showed that Boice moved
26      to the front of the group when they approached the motel room.  In light of

1         this, we conclude that the district court's error in allowing the Voltaire
Canyon statements was harmless beyond a reasonable doubt, and we decline
2         to disturb the district court's ruling.

3 (Exhibits to First Am. Pet. Ex. 277 at 19-20) (footnotes omitted).   At trial, the jury was given

4 instructions on, among other things, first-degree felony murder, second-degree murder, and second-

5 degree felony murder. (*Id*. Ex. 248.)  The jury was also instructed that all verdicts in the case must be

6 unanimous. (*Id*. Ex. 248 at Jury Instruction No. 42.)   The court further instructed the jury that with

7 respect to second-degree murder with use of a deadly weapon, the jury need not be unanimous in finding

8 that the murder was committed with malice aforethought or that it was perpetrated in the course and

9 furtherance of battery with use of a deadly weapon under a second-degree felony-murder theory.  (*Id*.)

10 The court instructed the jury that "it is sufficient that each of you find beyond a reasonable doubt that

11 the murder, under either theory, was murder of the second degree with use of a deadly weapon." (*Id*.)

12 However, the jury returned a verdict specifically finding petitioner guilty of second-degree *felony* murder

13 with use of a deadly weapon and not guilty of second-degree murder with use of a deadly weapon. (*Id*.

14 Ex. 247.)  Thus, the jury must have concluded, unanimously, that petitioner committed murder of the

15 second degree with use of a deadly weapon in the course and furtherance of battery with use of a deadly

16 weapon.   Additionally, the jury must have concluded, unanimously, that petitioner did not commit

17 murder of the second degree with malice aforethought.

18       Under Nev. Rev. Stat. § 200.481(1)(a), battery means "any willful and unlawful use of force or

19 violence upon the person of another."   To reach a verdict that petitioner was guilty of second-degree

20 felony murder based upon a battery, the jury only needed to find that petitioner "willfully and unlawfully

21 used force or violence upon the person of another."  Petitioner's own testimony, described above in the

22 discussion of ground one, demonstrates that he willfully struck Resendiz three times with his wooden

23 stick.  The statements made at Voltaire Canyon arguably imply that he was satisfied with his actions and

24 intended to go to the Inn to physically harm the Tokers.  However, at most, these statements may have

25 impacted the jury's assessment of whether petitioner acted with malice aforethought.   Even if by

26 considering the statements the jury was more inclined to find that petitioner had acted with malice

aforethought, they, nevertheless, acquitted him of second-degree murder, which is the only offense requiring such a mental state.  Therefore, even after assuming the full damaging potential of the Voltaire-Canyon statements, the court concludes that the admission of these statements, assuming admission was error, was harmless because they did not have a substantial and injurious effect or influence in determining the jury's verdict.

In performing the harmless error analysis, the Nevada Supreme Court held that the district court's admission of the Voltaire-Canyon statements was "harmless beyond a reasonable doubt."  This is the appropriate harmless-error standard under *Chapman v. California*, 386 U.S. 18 (1967).  The Nevada Supreme Court's application of "harmless error" analysis to the admission of the Voltaire-Canyon statements was not objectively unreasonable or in conflict with United States Supreme Court precedent.  Petitioner has failed to prove that the Nevada Supreme Court's application of the harmless-error rule to the facts of this case was objectively unreasonable.  Moreover, the Nevada Supreme Court's decision does not run afoul of the "beyond-a-reasonable doubt" harmless error standard of *Chapman v. California*, 386 U.S. 18, 24 (1967).  Nor has petitioner shown that the Voltaire-Canyon statements had a "substantial and injurious effect or influence in determining the jury's verdict" under the independent harmless error review standard of *Brecht v. Abramson*, 507 U.S. 619, 623 (1993).  This court will deny habeas relief as to ground two.

**C. Ground Three**

In ground three, petitioner claims that the enhancement of a life sentence for a conviction of use of a deadly weapon pursuant to Nev. Rev. Stat. § 193.165 constitutes a violation of the Double Jeopardy Clause of the Fifth Amendment made applicable to the States through the Fourteenth Amendment.

Respondents argue that the enhancement for use of a deadly weapon under Nev. Rev. Stat. § 193.165 may be used to enhance the primary offense and that this court is bound by Nevada Supreme Court's interpretations of Nevada's statutes and legislative intent.

1.  Legal Standard

The Double Jeopardy clause "protects against multiple punishments for the same offense." *Ohio*

*v. Johnson*, 467 U.S. 493, 498 (1984) (quoting *Brown v. Ohio*, 432 U.S. 161 (1977)).  This protection is designed to ensure that the court's sentencing discretion is confined to the limit established by the state legislature.  *Johnson*, 467 U.S. at 499.  "Because the substantive power to prescribe crimes and determine punishments is vested with the legislature, the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent."  *Id.* (quotations omitted).  When evaluating whether a state legislature intended to prescribe cumulative punishments for a single criminal incident under the Double Jeopardy Clause, a federal court is bound by a state court's determination of the legislative intent.  *See Johnson*, 467 U.S. at 499; *Missouri v. Hunter*, 459 U.S. 359, 368 (1983).

The United States Supreme Court held that the Double Jeopardy Clause does not preclude a state legislature from imposing cumulative punishments for a single offense.  *Missouri v. Hunter*, 459 U.S. 359 (1983).  The Court ruled in *Hunter*: "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."  *Missouri v. Hunter*, 459 U.S. at 480.  The Nevada Supreme Court has ruled that Nev. Rev. Stat. § 193.165 "clearly evidences a legislative intent to impose separate penalties for a primary offense and for the use of a deadly weapon in the commission of the offense."  *Nevada Dep't of Prisons v. Bowen*, 103 Nev. 477, 481, 745 P.2d 697, 699 (1987).

2.  Discussion

Petitioner argues that the deadly weapon enhancement violated the Double Jeopardy Clause because the crime of battery with use of a deadly weapon, which served as the predicate felony for the second-degree felony murder conviction, necessarily includes, as an element, a deadly weapon.

In addressing this argument, the Nevada Supreme Court concluded:

> In Cordova, the defendant was charged with second degree murder with use of a deadly weapon for shooting through the front door of an apartment and killing the victim.  The district court instructed the jury on second degree felony murder with the predicate felony of shooting into an occupied dwelling.  After the jury returned a guilty verdict, the district court sentenced the defendant to two consecutive terms of life imprisonment with the possibility of parole.  The defendant appealed, claiming that the use of a deadly weapon was a necessary element of the crime he committed.  We

13

held that the offense of second-degree murder, "considered in the abstract," did not include the use of a firearm as an essential element and thus the deadly weapon enhancement was appropriate.

In the case a bar, the prosecution charged Boice as a principal to second degree murder with the use of a deadly weapon. While the jury found Boice guilty as a principal to second degree <u>felony</u> murder with the use of a deadly weapon, the judgment of conviction adjudicated Boice guilty as a principal to second degree murder with the use of a deadly weapon. Similar to <u>Cordova</u>, the jury convicted Boice based on an underlying felony involving the use of a deadly weapon. As in <u>Cordova</u>, the use of a deadly weapon is not a necessary element of the offense of second degree murder "considered in the abstract." The use of a deadly weapon served to enhance Boice's sentence.

Boice's attempt to distinguish <u>Cordova</u> is inapposite. Boice argues that <u>Cordova</u> is inapplicable because his second degree murder conviction rested on the underlying battery with the use of a deadly weapon and thus the conviction already included the deadly weapon enhancement. Boice, however, fails to note that the underlying felony in <u>Cordova</u>, shooting into an occupied dwelling, also necessarily involved the use of a deadly weapon.
. . .

(Exhibits to First Am. Pet. Ex. 277 at 23-24) (footnotes omitted). In this case, petitioner was convicted of second-degree murder based on a felony-murder theory with battery with use of a deadly weapon serving as the predicate felony. The deadly-weapon enhancement was an additional penalty for the primary offense of second-degree murder, not a second punishment for the same offense in excess of that authorized by the legislature, and thus does not violate the Double Jeopardy Clause. Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This court will deny habeas relief as to ground three.

**D. Ground Four**

In ground four, petitioner claims that insufficient evidence supports his conviction for battery with a deadly weapon upon Carlos Lainez. As a result, petitioner claims he was denied his right to due process under the Fifth and Fourteenth Amendments to the United States Constitution.

Respondents argue that sufficient evidence existed at trial to convict petitioner as a principal and/or co-conspirator to the battery with a deadly weapon of Lainez.

<u>1. Legal Standard</u>

14

1    When a habeas petitioner challenges the sufficiency of evidence to support his conviction, the

2    court reviews the record to determine "whether, after viewing the evidence in the light most favorable

3    to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond

4    a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Jones v. Wood*, 207 F.3d 557, 563

5    (9th Cir. 2000).  The court must assume that the jury resolved any evidentiary conflicts in favor of the

6    prosecution, and the court must defer to that resolution.  *Jackson*, 443 U.S. at 326; *Schell v. Witek*, 218

7    F.3d 1017, 1023 (9th Cir. 2000) (*en banc*).  The credibility of witnesses is beyond the scope of the

8    court's review of the sufficiency of the evidence.  *See Schlup v. Delo*, 513 U.S. 298, 330 (1995).  Under

9    the *Jackson* standard, the prosecution has no obligation to rule out every hypothesis except guilt.  *Wright*

10   *v. West*, 505 U.S. 277, 296 (1992) (plurality opinion); *Jackson*, 443 U.S. at 326;  *Schell*, 218 F.3d at

11   1023.  *Jackson* presents "a high standard" to habeas petitioners claiming insufficiency of evidence.

12   *Jones*, 207 F.3d at 563.

13          2.  Discussion

14   At trial, Carolee Simpson, testified that a Toker, Carlos Lainez, was asleep on an adjacent bed

15   when petitioner's group entered the room.  (Exhibits to First Am. Pet. Ex. 226 at 27-30.)  She testified

16   that members of the group began hitting Lainez.  (*Id*.)  Lainez escaped severe injuries but received

17   stitches at the hospital for two wounds on his head.  (*Id*. Ex. 224 at 55-56.)

18   Petitioner contends that the evidence at trial failed to demonstrate that he struck Lainez or that

19   a deadly weapon was used against Lainez.  Petitioner asserts that Jaron Malone testified that he hit

20   someone with his fist and that Contreras testified that Jaron Malone was with Lainez on the second bed.

21   Additionally, petitioner asserts that although evidence showed that two members of petitioner's group

22   were armed with a chain and a rusted bar, the evidence is far from proof beyond a reasonable doubt that

23   those items were used in striking Lainez.  According to petitioner, the mere fact that persons were

24   present with weapons does not mean that those weapons were used against Lainez.

25   In addressing this claim, the Nevada Supreme Court ruled:

26                  Boice argues that there was insufficient evidence to support his
            principal to battery with use of a deadly weapon conviction for the injuries

15

> Lainez sustained. We disagree.
>
> Battery is "any willful and unlawful use of force or violence upon the person of another." To uphold a battery conviction, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier or fact could have found the essential elements of the crime beyond a reasonable doubt."
>
> Boice argues that we should reverse his battery with the use of a deadly weapon conviction because there was no evidence Boice ever struck Lainez. This argument lacks merit. While no evidence showed that Boice was personally involved in hitting Lainez, there was sufficient evidence to sustain his conviction as a principal for his overall participation in producing Lainez' injuries.

(*Id*. Ex. 277 at 29) (footnotes omitted).

As discussed above with respect to ground one, at trial, petitioner testified that he told his friends to "back [him] up in case anything did go on" at the Inn because he "didn't want to be jumped by all these guys." (*Id*. Ex. 239 at 22.) Petitioner testified that after arriving at the Inn, he entered the room first and hit Resendiz three times. After petitioner took this action, others in his group entered the room and struck Resendiz and Lainez. Evidence introduced at trial showed that Clint Malone was armed with a rusted bar, Lew Dutchy was armed with a chain, and Julian Contreras was armed with a baseball bat. (*Id*. Ex. 228 at 19, Ex. 229 at 90-93.) Simpson testified that she saw Contreras fighting Lainez. (*Id*. Ex. 226 at 111, 115.) Although the evidence does not suggest that petitioner struck Lainez, himself, testimony shows that members of petitioner's group struck Lainez, including Contreras, who was armed with a baseball bat. Under Nevada law, a "principal," such as petitioner, includes not only the person who directly commits the act constituting the offense but one who aids, abets, or encourages the act. Nev. Rev. Stat. § 195.020. Petitioner told his friends that he wanted them to back him up. By his actions in leading the charge into the room and commencing the attack on Resendiz, a rational jury could have concluded that petitioner aided, abetted, or encouraged the blows inflicted on Lainez by petitioner's friends. Additionally, in reaching such a conclusion, a rational jury could have concluded that the battery was accomplished with use of a deadly weapon to which petitioner aided, abetted, or encouraged. In sum, in viewing the evidence in the light most favorable to the prosecution, a rational jury could have found petitioner guilty of principal to battery with use of a deadly weapon. The Nevada Supreme Court cited to and applied the correct federal standard, *Jackson v. Virginia*, 433 U.S. 307 (1979), in reviewing

petitioner's insufficiency of the evidence claim. (*Id*. at 29 n. 66.)  The factual findings of the state court are presumed correct.  28 U.S.C. § 2254(e)(1).  Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This court will deny habeas relief as to ground four.

**E. Ground Five**

In ground five, petitioner claims that the trial court's refusal to allow full and fair cross-examination of several state witnesses as well as inquiry into bad act evidence relevant to them and the victim violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution.

Respondents argue that the trial court's limiting of unrelated bad acts of witnesses on cross-examination was not error because its decisions comport with Nevada evidentiary law.

### 1.  Legal Standard

A criminal defendant's Sixth Amendment rights include the right to cross-examination, *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974), and to present relevant evidence, *Michigan v. Lucas*, 500 U.S. 145, 149-52 (1991). However, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Wood v. Alaska*, 957 F.2d 1544, 1549 (9th Cir. 1992).

In order to determine whether a Sixth Amendment violation occurred, it is, therefore, necessary to make a two-part inquiry.  *Wood*, 957 F.2d at 1549-50.  First, the court must inquire whether the excluded evidence is relevant.  *Id.* at 1550.  If the evidence is relevant, the court asks next whether other legitimate interests outweigh the interest in presenting the evidence.  *Id*.  There is a Sixth Amendment violation if the trial court abuses its discretion.  *Id*.  If the court finds that there was a Sixth Amendment violation, the court must then determine whether or not that error was harmless.  A claim that a trial court erred by limiting cross-examination in violation of a defendant's Sixth Amendment rights is

17

subject to harmless-error analysis.  *See Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).  When seeking a writ of habeas corpus on the basis of trial error, the petitioner must demonstrate that the trial error "had substantial and injurious effect or influence in determining the jury's verdict."  *See Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993); *Bonin v. Calderon*, 59 F.3d 815, 824 (9th Cir. 1995).  In other words, a petitioner must establish that the error resulted in "actual prejudice."  *See Brecht*, 507 U.S. at 637.

### 2.  Discussion

Petitioner challenges the trial court's decision to restrict and limit his ability to conduct a full cross-examination of several prosecution witnesses.  Petitioner contends that the testimony he sought to elicit was relevant to his state of mind when he entered the room at the Inn and that the testimony was critical to his self-defense theory.  Petitioner argues that the following decisions of the trial court were error:

(1)    Limiting cross-examination on Lainez's use of methamphetamine in support of Toker gang activity and limiting cross-examination on a plea agreement reducing a felony charge to a misdemeanor offense;

(2)    The trial court's grant of immunity to Lainez to encourage his testimony;

(3)    Precluding evidence regarding two incidents in 2000 where Lainez spat on Lew Dutchy and challenged him to a fight;

(4)    Precluding cross-examination of Lainez regarding his possession of four guns and the pending prosecution at the time of trial regarding his possession;

(5)    Precluding cross-examination of Simpson regarding a conviction for battery;

(6)    Precluding introduction of Resendiz's domestic violence conviction;

(7)    Precluding cross-examination of a Carson City deputy sheriff regarding an incident in which Resendiz pulled a knife on him;

(8)    Precluding questioning regarding Muppet's expulsion from high school for carrying a firearm;

(9)     Precluding cross-examination of Muppet regarding his threats against Contreras and Contreras's father;

(10)    Precluding cross-examination regarding Resendiz having fired a gun at another Native American two weeks prior to the incident;

(11)    Precluding evidence that Resendiz was to conduct a drive-by shooting in the Reno area.

The Nevada Supreme Court ruled as follows in response to petitioner's arguments:

> Under NRS 48.045(1), character evidence is normally inadmissable to show that a person acted in conformity with that character. One of the exceptions to NRS 48.045(1), however, allows a defendant to present evidence of a victim's character, but may offer evidence only in the form of reputation or opinion testimony. While the district court may admit evidence of a victim's specific acts, such evidence can only serve the purpose of establishing what the defendant believed about the victim's character. Where the defendant raises self-defense, this evidence is relevant to show whether the defendant reasonably believed that use of force in self-defense was necessary. In such cases, the defendant must prove that he had knowledge of the alleged specific instances of misconduct.
>
> Despite all these limitations, NRS 48.045(2) permits the admission of evidence of "other crimes, wrongs or acts" for purposes other than character, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Prior specific acts are also admissible for impeachment if they resulted in a felony conviction. Absent a felony conviction, a party may inquire into specific acts if they relate to truthfulness, but the cross-examiner may not introduce extrinsic evidence to prove the alleged acts.
>
> Boice points to eleven instances where the district court allegedly erred. We will briefly address each instance. First, Boice alleges that the district court erred in restricting defense counsel's inquiry into Lainez' methamphetamine consumption to five days prior to the 1998 incident. We conclude that the district court's ruling was correct. By attempting to demonstrate an alleged "Toker gang activity," Boice's counsel merely aimed to show bad character by implying that Lainez was a loyal member of a group that society could condemn. Boice's "defect in perception" argument is also inapposite because the jury heard evidence of Lainez' marijuana consumption on the night in question. Evidence of drug intake outside the five-day time frame the district court allowed would be less relevant and highly prejudicial. Regarding Lainez' understanding of his plea agreement, the district court did permit Boice's counsel to ask whether Lainez obtained a beneficial charge reduction.
>
> Second, Boice argues that the district court improperly granted Lainez immunity to testify. This argument is inapposite because the district court granted immunity to Lainez <u>at the prosecution's request</u>.
>
> Third, Boice asserts that the district court erroneously precluded his evidence that Boice had received from Dutchy regarding two alleged occasions in the year 2000 where Lainez spat on Dutchy and challenged him to a fight. Because this occurred subsequent to 1998, the district court did not abuse its discretion in excluding this evidence.

Fourth, Boice argues that the district court should have permitted cross-examination as to Lainez' pending prosecution for gun possession.  The district court's decision was correct because this occurred after the 1998 incident.

Fifth, Boice asserts that the district court erred in precluding cross-examination about Simpson's misdemeanor battery conviction.  The district court rightfully excluded the evidence because NRS 50.095(1) expressly prohibits the introduction of this misdemeanor conviction.

Sixth, Boice claims that the district court erroneously precluded introduction of Resendiz' domestic violence conviction.  We conclude Boice's contentions lack merit.  In Daniel v. State[, 78 P.3d 890, 902 (Nev. 2003)] and Petty v. State[, 997 P.2d 803 (Nev. 2000)], we held that evidence of the victims' prior violent conduct was admissible where the defendants demonstrated knowledge of this conduct.  Unlike Daniel and Petty, there was no evidence that Boice know of Resendiz' domestic violence conviction.  Absent such knowledge, the conviction had no probative value and the district court properly excluded it.

Seventh, Boice argues that the district court incorrectly limited cross-examination about Resendiz' prior attack on a Carson City deputy sheriff.  We hold that the district court did not err in excluding the evidence because there was no indication that Boice knew of this incident.  In such cases, the defense can prove the victim's character for violence only through reputation or opinion.

Eighth, Boice claims that the district court erred in precluding inquiry into whether Muppet was expelled from high school for carrying a firearm.  We find this argument inapposite.  Under then existing NRS 62.193(1) and NRS 62.295, a juvenile adjudication was generally not a criminal proceeding and did not result in a conviction.  The defense did not dispute the fact that Muppet had received a juvenile adjudication, and thus his firearm possession "conviction" cannot serve for impeachment purposes.

Ninth, Boice argues that the district court should have allowed his counsel's questions regarding alleged threats against Contreras that Muppet made to Contreras' father.  The police arrested Muppet as a result of the threat, but there was no evidence of a conviction.  The district court's ruling was correct because the arrest was inadmissible for two reasons: (1) there was no conviction, and thus the specific bad acts constitute impermissible character evidence; and (2) even if there was a conviction, juvenile convictions may not serve for impeachment purposes.

Tenth, Boice asserts that the district court should have permitted examination as to whether a witness knew about Resendiz firing a gun at another Native American about two weeks before the incident.  The district court properly excluded the evidence because the defense made no showing that Boice knew about this act and Boice testified that he did not identify Resendiz on the night in question.

Finally, Boice maintains that the district court erred in precluding evidence that Resendiz was to conduct a drive-by shooting in the Reno area.  The district court correctly excluded this evidence because the defense presented no proof that Boice knew of Resendiz' character, and thus specific acts were inadmissible.  The district court's actions were squarely on point with NRS 48.045 and our holding in Daniel.

(Exhibits to First Am. Pet. Ex. 277 at 30-34) (footnotes omitted).

1    After throughly reviewing each ruling, the court discerns no prejudicial error.  In his reply brief,

2    petitioner fails to present pointed argument, supported by legal authority, on which rulings, specifically,

3    were made in error.  Petitioner contends that the trial court should have allowed reputation or opinion

4    evidence regarding Resendiz's character and the violent reputation of the Tokers.  However, many of

5    the challenged rulings involve specific instances of misconduct, of which petitioner does not argue he

6    had knowledge of prior to the incident, and not reputation or opinion evidence.  In fact, the record shows

7    that the district court permitted petitioner to elicit reputation and opinion testimony regarding Resendiz's

8    and the Tokers's violent behavior.  For example, on cross-examination of Rick Encinas, a sheriff's

9    deputy, defense counsel questioned Encinas about Resendiz's reputation for violence in the community

10   and his reputation for carrying a firearm.  (*Id*. Ex. 221 at 163-164.)  Defense counsel also questioned

11   Encinas about the Tokers's use of guns and knives and his opinion about whether Resendiz was a violent

12   person.  (*Id*. Ex. 221 at 165.)

13   Moreover, even if the trial court's rulings were erroneous, petitioner has failed to show that they

14   had a "substantial and injurious effect or influence in determining the jury's verdict" under the

15   independent harmless-error review standard of *Brecht v. Abramson*, 507 U.S. 619, 623 (1993).

16   Petitioner's primary argument is that he acted in self-defense and that the violent behavior of Resendiz

17   and the Tokers informed his state of mind in taking the acts that he did at the Inn.  Testimony in the form

18   of reputation and opinion evidence was elicited to support this theory.  To the extent any of the evidence

19   to which petitioner points was erroneously excluded, it did not have a substantial and injurious effect

20   in determining the jury's verdict.

21   The Nevada Supreme Court was correct in its determination of this claim, and there was no error

22   or unreasonableness in its legal or factual determination.  The factual findings of the state court are

23   presumed correct.  28 U.S.C. § 2254(e)(1).  Petitioner has failed to meet his burden of proving that the

24   state court's ruling was contrary to, or involved an unreasonable application of, clearly established

25   federal law, as determined by the United States Supreme Court, or that the ruling was based on an

26   unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

1  This court will deny habeas relief as to ground five.

2      **F. Ground Six**

3      In ground six, petitioner claims that the trial court's conduct throughout his trial violated his

4  Sixth and Fourteenth Amendment right to due process and a fair trial presided over by a fair and

5  impartial judge.

6      Respondents argue that most of the arguments between the judge and defense counsel occurred

7  outside the presence of the jury, and thus, petitioner cannot show prejudice because it could not have

8  affected the jury.  As to the argument that did occur in the presence of the jury, respondents contend that

9  counsel invited the confrontation but that any error was cured by an instruction to the jury that they not

10 consider any action by the judge as it related to his opinion of the parties or their positions.

11      1.  Legal Standard

12      The Due Process Clause guarantees a criminal defendant the right to a fair and impartial judge.

13 *In re Murchison*, 349 U.S. 133, 136 (1955). To prevail on a judicial bias claim, however, a petitioner

14 must "overcome a presumption of honesty and integrity in those serving as adjudicators." *Withrow v.*

15 *Larkin*, 421 U.S. 35, 47 (1975).

16      In *Liteky v. United States*, 510 U.S. 540 (1994), the majority opinion discusses at length the

17 circumstances under which judicial bias or prejudice requires recusal of a presiding judge. 510 U.S. at

18 544-56.  Although the discussion was ultimately concerned with the proper interpretation of a federal

19 recusal statute (28 U.S.C. § 455), the Ninth Circuit has relied on the principles set forth in *Liteky* in

20 determining whether a habeas petitioner has a meritorious Fourteenth Amendment claim for deprivation

21 of a fair trial based on judicial bias.  *See, e.g., Larson v. Palmateer*, 515 F.3d 1057, 1067 (9th Cir. 2008);

22 *Poland v. Stewart*, 117 F.3d 1094, 1103-04 (9th Cir.1997) (applying *Liteky* to judicial bias claim in death

23 penalty case).

24      Among the oft-cited principles discussed in *Liteky* is that bias can "almost never" be

25 demonstrated solely on the basis of a judicial ruling. 510 U.S. at 555.  In essence, where there is no

26 allegation that an extrajudicial source of prejudice, a judge's actions occurring in the course of a judicial

1   proceeding will be grounds for a judicial bias claim only if they "display a deep-seated favoritism or

2   antagonism that would make fair judgment impossible." *Id.* "In the absence of any evidence of some

3   extrajudicial source of bias or partiality, neither adverse rulings nor impatient remarks are generally

4   sufficient to overcome the presumption of judicial integrity, even if those remarks are 'critical or

5   disapproving of, or even hostile to, counsel, the parties, or their cases.'" *Larson*, 515 F.3d at 1067

6   (quoting *Liteky*, 510 U.S. at 555).

7             2.  Discussion

8             Petitioner argues that the statements made by the trial court chilled the defense case and

9   obstructed the defense.  Petitioner contends that the trial judge was preoccupied with defense counsel's

10   ability to behave appropriately, which made it reasonable for counsel to remain quiet during the

11   remainder of the trial rather than voice objections and risk "antagonizing" the judge.  Petitioner asserts

12   that even where many of the confrontational exchanges occurred outside the presence of the jury, the

13   judge's behavior and conduct had a chilling effect on counsel's ability to advocate for fear of angering

14   the trial judge.

15             The Nevada Supreme Court addressed petitioner's arguments by stating, in part, the following:

16             In the instant case, the relationship between the district court and
       defense counsel appeared confrontational throughout the trial.  The district
17       court continuously precluded counsel's inquiry into specific bad acts.  Because
       defense counsel continued to inquire into specific acts, the district judge held
18       a meeting <u>outside</u> the jury's presence.  The judge instructed counsel to ask
       permission before talking about prior bad acts.  The court stated: "[D]on't just
19       shoot off from the top of the hip, or we'll stop it.  Because if you do it very
       many more times, you won't be allowed to ask questions."  With the jury
20       present, defense counsel inquired into Resendiz' alleged gun possession, and
       the district court admonished, "[S]pecific acts can't be inquired into, sir."
21       Defense counsel then attempted to dispute the ruling and the district court
       replied, "That's denied, sir.  One more time, and we'll have a little talk about
22       what you are doing here today, sir."  Defense counsel retorted, "That's for
       another court."  The district court then responded that counsel was either going
23       to try the case in accordance with the rules of evidence or he was not going to
       try it.
24             As a result of this argument, the district court called another meeting
       <u>outside</u> the jury's presence.  The court told counsel that he was not "going to
25       pull this trick again."  The district court stated that counsel persisted in
       disregarding the court's instructions on specific acts, although the court told
26       him "about five times" he could not do that.  Although counsel apologized for
       the "another court" comment, the district judge stated that if counsel continued

                                                                      23

his behavior, the judge would not put up with it.  Later that same day, the district court had another specific acts dispute with defense counsel outside the jury's presence.  Although the court again precluded counsel's inquiry into specific acts, the court remarked, "And that's a fair – that's a fair attempt to ask a question, so I'm not concerned about that.  That's a fair question."  On yet another occasion outside the presence of the jury, the district court limited defense counsel's inquiry into Lainez' methamphetamine consumption and Lainez' alleged confrontation with Dutchy at a restaurant.

We conclude that the district court's conduct did not deprive the defendant of a fair trial.  Unlike Oade, where the district judge repeatedly reproached counsel in front of the jury, in this case the demonstrations of tension between counsel and the district court in the jury's presence were limited and not seriously damaging.

As far as the arguments between the district court and counsel outside the jury's presence, the district court had a good reason for admonishing counsel.  Boice's counsel repeatedly inquired into specific acts in violation of evidence rules and the district judge's prior instructions.  Counsel was also disrespectful toward the district judge in the jury's presence.  While counsel argues that the district court's actions chilled his ability to zealously represent his client, counsel's own behavior created the antagonistic atmosphere.  The district court's actions did not violate Boice's right to a fair trial.

(Exhibits to First Am. Pet. Ex. 277 at 35-37) (footnotes omitted).

Here, the court concludes that the district judge's comments do not rise to a level amounting to a denial of due process.  The majority of the confrontational exchanges between defense counsel and the district court judge occurred outside the presence of the jury.  (Id. Ex. 221 at 89-100, 165-168, 183-192, Ex. 224 at 68-80, 85-88.)  Because all of these exchanges occurred outside the presence of the jury, no prejudice could have resulted from the trial judge's actions.  See Duckett v. Godinez, 67 F.3d 734, 740 n.3 (9th Cir. 1995).  The argument that did occur in the presence of the jury, while arguably hostile, does not show the type of deep-seated antagonism on the part of the judge making fair judgment impossible.  (Exhibits to First Am. Pet. Ex. 221 at 87-89.)  In fact, after the contentious exchange, the district court judge stated in the presence of the jury that he and the attorneys were in a "mine field in the rules of evidence" and that the difficult evidentiary questions and objections were "not anybody's fault." (Id. Ex. 221 at 168, 182.)  The district judge also told the jury that he appreciated that they had a sense of humor about the frequent evidentiary hearings being held outside their presence because

the parties are trying their best to make their point legally . . . in the most difficult area of evidence in the law . . . . So it requires us to spend some time sending you out.  Don't hold it against anybody because both sides are entitled to make their arguments and I have to keep you out while they're

24

> making their arguments because some of the evidence is admissible and some isn't.  So thank you for your continued patience.

(*Id*. Ex. 224 at 88-89.)  In sum, the one contentious exchange between defense counsel and the district judge, when considered in the context of the trial as a whole, is not of sufficient gravity such that petitioner was denied fundamental fairness.  The factual findings of the state court are presumed correct. 28 U.S.C. § 2254(e)(1).  Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  This court will deny habeas relief as to ground six.

**G. Ground Seven**

In ground seven, petitioner claims that the trial court's admission of Roberts' and Lainez's testimony without complying with Nev. Rev. Stat. § 174.061 violated his right to due process, and consequently, his conviction and sentence are invalid under the Fifth and Fourteenth Amendments to the United States Constitution.

Respondents argue that ground seven merely raises an issue of state law but that even if it states a constitutional claim, the state court's decision was not contrary to or an unreasonable application of clearly established federal law.

1.  Legal Standard

The application of Nev. Rev. Stat. § 174.061 is a question of state law.  Alleged errors in the interpretation or application of state law do not warrant habeas relief.  *Hubbart v. Knapp*, 379 F.3d 773, 779-80 (9th Cir. 2004).  "Federal habeas corpus relief does not lie for errors of state law . . . it is not the province of a federal habeas court to reexamine state court determinations of state law."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (quotations and internal citation omitted).  Issues relating to jury instructions are not cognizable in federal habeas corpus unless they infect the entire trial to establish a violation of due process.  *Id*. at 72; *Henderson v. Kibbe,* 431 U.S. 145, 154 (1977).  Demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the Constitutional

1  validity of a state court's judgment requires the court to determine "whether the ailing instruction by

2  itself so infected the entire trial that the resulting conviction violates due process," not whether the

3  instruction is "undesirable, erroneous, or even universally condemned." *Henderson,* 431 U.S. at 154

4  (citations omitted); *Estelle,* 502 U.S. at 72.  In reviewing jury instructions, the court inquires as to

5  whether the instructions as a whole are misleading or inadequate to guide the jury's deliberation. *U.S.*

6  *v. Garcia-Rivera,* 353 F.3d 788, 791 (9th Cir. 2003) (citing *United States v. Frega,* 179 F.3d 793, 806

7  n.16 (9th Cir. 1999) (internal citations omitted).  The question is whether an instruction so infected the

8  entire trial that the resulting conviction violated due process. *Estelle*, 502 U.S. at 72.  An instruction

9  may not be judged in isolation, "but must be considered in the context of the instructions as a whole and

10  the trial record." *Id.*  Furthermore, jurors are presumed to follow the instructions that they are given.

11  *United States. v. Olano,* 507 U.S. 725, 740 (1993).

12            2.  Discussion

13            Petitioner contends that although the trial court instructed the jury to consider the testimony of

14  several witnesses who were receiving reduced sentences from the State with more caution than the

15  testimony of other witnesses, it failed to similarly instruct as to the testimony of Roberts and Lainez.

16  Additionally, petitioner argues that Nev. Rev. Stat. § 174.061 was not complied with because neither

17  Roberts nor Lainez testified that any agreement they had with the State was void if they testified

18  untruthfully.  Consequently, according to petitioner, the jury was unable to properly weigh their

19  credibility.

20            In addressing this claim, the Nevada Supreme Court held:

21            Boice argues that admitting the testimony of Roberts and Lainez
            violated NRS 174.061 because neither witness testified that their agreement
22            with the prosecution would be void if they testified falsely.  We find this
            argument unavailing.
23            NRS 174.061(1) mandates that

24                      [if] a prosecuting attorney enters into an
                      agreement with a defendant in which the
25                      defendant agrees to testify against another
                      defendant in exchange for a plea of guilty . . . to
26                      a lesser charges . . ., the agreement . . . must be in
                      writing and include a statement that the

26

1

agreement is void if the defendant's testimony is false.

2

3       Boice's claim rests on the fact that neither Lainez nor Roberts testified that their "agreements" with the prosecution were void if they testified truthfully. A review of the record reveals that NRS 174.061 does not apply to either of these witnesses. Lainez is <u>one of the victims</u> in this case, he is not a defendant. Boice's assertion regarding Roberts is also inapposite because Roberts was also never a defendant in the instant case. While Roberts was one of the Native Americans who went to the Roundhouse Inn, the prosecution decided not to press charges against Roberts due to his marginal participation in the incident.

4

5

6

7

(Exhibits to First Am. Pet. Ex. 277 at 37-38.)

8

9       Assuming without deciding that the trial court erred by failing to comply with Nev. Rev. Stat.

10  § 174.061, to the extent that such error affected how the jury was instructed concerning witness

11  credibility, the error was not so substantial as to infect the entire trial so that petitioner's resulting

12  conviction violates due process. First, the jury was instructed, generally, in determining the degree of

13  credibility of a witness, including being specifically instructed to consider "his or her manner upon the

14  stand, his or her fear, motives, interest, or feelings . . . ." (*Id*. Ex. 248 at Jury Instruction No. 6.) The

15  failure of the trial court to provide a specific credibility instruction regarding Roberts and Lainez did not

16  infect the entire trial so that petitioner was denied due process. Second, Roberts testified that the

17  agreement he had with law enforcement required him to "[t]o tell the truth" and "everything [that he

18  knew.]" (*Id*. Ex. 229 at 14.) Roberts also testified that he would receive a misdemeanor or "something"

19  for his testimony. (*Id*. Ex. 229 47-48.) During Lainez's testimony, the prosecutor advised, in the jury's

20  presence, that Lainez was being granted immunity for admission of drug use for the period of time near

21  the attack. (*Id*. Ex. 224 at 38-40.)[5] The factual findings of the state court are presumed correct. 28

22  U.S.C. § 2254(e)(1). Petitioner has failed to meet his burden of proving that the state court's ruling was

23

24       [5] Additionally, to the extent petitioner seeks to raise a constitutional violation under *Giglio v. United States*, 405 U.S. 150 (1972), for the first time in his reply brief, such a claim is not properly before the court because it is outside the scope of ground seven as presented in the first amended petition. The due process violation alleged in ground seven is the court's failure to comply with Nev. Rev. Stat. § 174.061 and failure to properly instruct the jury, not improper disclosure of evidence by the State under *Giglio*. Moreover, any *Giglio* claim appears to be unexhausted.

25

26

27

contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  This court will deny habeas relief as to ground seven.

**H.  Ground Eleven**

In ground eleven, petitioner claims that the flawed jury selection process deprived him of his right to due process under the Fifth and Fourteenth Amendments to the United States Constitution. Petitioner contends that the trial court erred by forcing the parties to exercise their peremptory challenges prior to the conclusion of passing the final panel for cause.

Respondents argue that petitioner fails to cite to any clearly established federal law that mandates the order of challenges to jurors or that he is entitled to peremptory challenges in a criminal proceeding as a matter of federal constitutional law.  Additionally, respondents argue that any constitutional error that occurred was harmless.

1.  Legal Standard

"The right to exercise peremptory challenges in state court is determined by state law." *Rivera v. Illinois*, 556 U.S. 148 (2009)**.  "**[P]eremptory challenges are not of federal constitutional dimension." *United States v. Martinez-Salazar*, 528 U.S. 304, 311 (2000).  The use of peremptory challenges is merely one mechanism "to achieve the constitutionally required end of an impartial jury." *Id*. at 307. "States may withhold peremptory challenges 'altogether without impairing the constitutional guarantee of an impartial jury and a fair trial.'" *Rivera*, 556 U.S. at 148 (quoting *Georgia v. McCollum*, 505 U.S. 42, 57 (1992)).  Accordingly, "[j]ust as state law controls the existence and exercise of peremptory challenges, so state law determines the consequences of an erroneous denial of such a challenge." *Id*. When a state provides peremptory challenges, it confers a benefit "beyond the minimum requirements of fair jury selection, and thus retains discretion to design and implement their own systems." *Id*. (internal quotations, alterations, and citations omitted).  Therefore, the "mistaken denial of a state-provided peremptory challenge does not, without more, violate the Federal Constitution" because

a mere error of state law "is not a denial of due process." *Id*. (internal quotations and citations omitted).

## 2. Discussion

Petitioner argues that he wasted a peremptory challenge on juror number eighteen because the trial court mandated that the parties exercise their peremptory challenges prior to the conclusion of passing the panel for cause. Petitioner contends that he was forced to use his peremptory challenges before he could properly assess the makeup of the jury that would be sitting through his trial.

The Nevada Supreme Court found the following in addressing this argument:

> Boice argues that the jury selection process was inappropriate and violated his constitutional rights. We find this argument inapposite.
> The process of selecting jurors for trial involves the examination of individual jurors to determine the need for exercising challenges for cause and peremptory challenges. Typically, challenges are exercisable in this order: (1) challenges to the array, (2) challenges for cause, and (3) peremptory challenges. "It has been said that in criminal cases especially, the order in which the challenges shall be exercised is mandatory."
> Boice asserts that the district court deprived him of his constitutional rights because the court allegedly forced Boice to exercise his peremptory challenges before he exercised his challenges for cause. A review of the record indicates otherwise. The district court exhausted the possible jury pool before completing the jury panel. After the parties had exercised their challenges for cause and their peremptory challenges pertaining to the then present jury pool, the district court determined that it still needed two more regular jurors and two alternates. Consequently, the district judge had to summon new potential jurors. To remedy the situation, the district court granted both sides an additional peremptory challenge for the remaining voir dire.
> We conclude that the district court's actions were proper. NRS 6.080 specifically provides a procedure for selecting additional jurors when the district court exhausts the jury pool. Thus, the legislature must have contemplated situations like the one at bar. It is difficult to imagine how the district court would exhaust the jury pool without entertaining the parties' jury challenges. The district court apparently recognized the need to remedy the unusual jury selection process and that is why it granted the additional peremptory challenge. The district court's actions were fair because both sides received an additional challenge and one challenge does not appear disproportionate to the number of jurors the district court needed to complete the panel. The district court's decision was correct.

(Exhibits to First Am. Pet. Ex. 277 at 42-43) (footnotes omitted).

Petitioner does not allege that the jury that convicted him was biased, composed of members who were unfit to sit as jurors, or that the State exercised its peremptory challenges on the basis of race such that his jury-selection claim is one of constitutional dimension. Petitioner's challenge to the jury

selection process merely amounts to a state-law issue that is not cognizable as a federal due process claim.  The factual findings of the state court are presumed correct.  28 U.S.C. § 2254(e)(1).  Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  This court will deny habeas relief as to ground eleven.

**I. Ground Twelve**

In ground twelve, petitioner claims that cumulative effect of the errors asserted in grounds one through eleven deprived him his rights to due process and a fair trial.

Respondents argue that because petitioner failed to establish error in grounds one through eleven, no cumulative error exists.  Additionally, respondents contend that to the extent that there is any error, such error does not amount to cumulative error.

The Nevada Supreme Court considered this claim and ruled:

> Boice argues that the cumulative effect of the district court's alleged trial errors warrants reversal.  We disagree.  While the cumulative effect of errors may violate a defendant's constitutional right to a fair trial even though the errors are harmless individually, this does not apply to the case at bar.  We conclude that the district court's decisions do not warrant a reversal.

(Exhibits to First Am. Pet. Ex. 277 at 43-44) (footnotes omitted).

The factual findings of the state court are presumed correct.  28 U.S.C. § 2254(e)(1).   To the extent that cumulative error may be grounds for federal habeas relief, the Ninth Circuit has stated that "the combined effect of multiple trial court errors violates due process where it renders the resulting criminal trial fundamentally unfair."  *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007).  This court has reviewed the state court record and the pleadings filed by the parties.  Petitioner has not demonstrated that cumulative errors occurred, and even assuming errors did occur, that such errors resulted in a trial that was fundamentally unfair.  Any errors at trial did not cause the criminal defense to be "far less persuasive than it otherwise might have been."  *See Parle*, 505 F.3d at 928 (citing *Chambers v. Mississippi*, 410 U.S. 284, 294 (1979)).  Petitioner has failed to meet his burden of proving

30

that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  This court will deny habeas relief as to ground twelve.

**J. Ground Thirteen**

In ground thirteen, petitioner claims that his conviction violated his Fifth and Fourteenth Amendment rights to due process because the aiding and abetting jury instructions impermissibly relieved the State of proving every element of the offense.  Petitioner bases his claim on the holding of *Sharma v. State*, 56 P.3d 868 (Nev. 2002), in which the Nevada Supreme Court held that a person may be found liable as an aider or abettor to a specific-intent offense only where the State has proven beyond a reasonable doubt that the person had the specific intent to commit the target offense.

Respondents argue that the jury instructions as a whole clearly show that the burden is on the State, not the defense, and that any error in the instructions was harmless.

1.  Legal Standard

Issues relating to jury instructions are not cognizable in federal habeas corpus unless they infect the entire trial to establish a violation of due process.  *Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe,* 431 U.S. 145, 154 (1977).  Demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the Constitutional validity of a state court's judgment requires the court to determine "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," not whether the instruction is "undesirable, erroneous, or even universally condemned."  *Henderson,* 431 U.S. at 154 (citations omitted); *Estelle,* 502 U.S. at 72.  In reviewing jury instructions, the court inquires as to whether the instructions as a whole are misleading or inadequate to guide the jury's deliberation.  *United States v. Garcia-Rivera,* 353 F.3d 788, 791 (9th Cir. 2003) (citing *United States v. Frega,* 179 F.3d 793, 806 n.16 (9th Cir. 1999) (internal citations omitted).  The question is whether an instruction so infected the entire trial that the resulting conviction violated due process.  *Estelle*, 502 U.S. at 72.  An instruction may not be judged in isolation,

1  "but must be considered in the context of the instructions as a whole and the trial record."  *Id.*

2  Furthermore, jurors are presumed to follow the instructions that they are given.  *United States v. Olano,*

3  507 U.S. 725, 740 (1993).

4         2.  Discussion

5         Petitioner argues that jury instructions nineteen and thirty-six incorrectly instructed the jury on

6  aiding and abetting.  Specifically, petitioner contends that the "natural and probable consequences"

7  doctrine, as defined in jury instruction nineteen, was disallowed in *Sharma*.

8        The *Sharma* issue raised by petitioner is a state law issue involving the correctness of instructions

9  under Nevada law regarding aiding and abetting.  A jury instruction contrary to state law does not

10  amount to a federal question under habeas corpus practice.  *Estelle v. McGuire*, 502 U.S. at 71-72;

11  *Mitchell v. Goldsmith*, 878 F.2d 219, 324 (9th Cir. 1989).  The Ninth Circuit has recognized that a state

12  court's failure to properly instruct the jury on elements of a crime may violate federal due process

13  guarantees.  *See Polk v. Sandoval*, 503 F.3d 903, 909-911 (9th Cir. 2007).  However, in the instant case,

14  there is no federal authority on point to support petitioner's argument that the challenged jury

15  instructions, which were allegedly contrary to a Nevada state law decision, violate petitioner's due

16  process rights.

17        Moreover, the Nevada Supreme Court's holding in *Sharma* pertains to *specific-intent* crimes.

18  In *Sharma*, the Nevada Supreme Court held that "in order for a person to be held accountable for the

19  *specific intent* crime of another under an aiding or abetting theory of principal liability, the aider or

20  abettor must have knowingly aided the other person with the intent that the other person commit the

21  charged crime."  *Sharma*, 56 P.3d at 872 (emphasis added).  In this case, petitioner was convicted of

22  second-degree felony murder with use of a deadly weapon with battery with use of a deadly weapon

23  serving as the predicate felony. (Exhibits to First Am. Pet. Ex. 247, Ex. 248 at Jury Instruction Nos. 34,

24  35.)  As petitioner correctly concedes, battery, as defined by Nev. Rev. Stat. § 200.481, is a *general-*

25  *intent* crime.  The holding in *Sharma* pertains to the mental state required for aiding and abetting a

26  specific-intent crime, not a general-intent crime.  The only specific-intent crime on which the jury was

1    instructed under an aiding and abetting theory was principal to second-degree murder, which requires

2    the mental state of implied malice aforethought.  (*Id*. Ex. 248 at Jury Instruction Nos. 22, 40, 41.)  The

3    jury did not find petitioner guilty of this crime, and thus, to the extent the jury instructions were

4    problematic, they did not infect the trial so that petitioner's resulting conviction violated due process.

5    *See Estelle*, 502 U.S. at 72.  Petitioner is not entitled to relief based on the challenged jury instructions

6    given in state court, and this court denies habeas relief as to ground thirteen.

7    **K. Ground Fourteen**

8    In ground fourteen, petitioner claims that he was denied his right to effective assistance of trial

9    counsel under the Sixth and Fourteenth Amendments to the United States Constitution.  Petitioner argues

10   that counsel was ineffective in three respects: (1) trial counsel unreasonably pursued a self-defense

11   theory; (2) trial counsel failed to request a jury instruction on misdemeanor battery as a lesser-included

12   offense of felony battery with use of a deadly weapon; and (3) trial counsel failed to object to jury

13   instructions nineteen and thirty-six as improper instructions on aiding and abetting.

14   Respondents argue that counsel's choice to pursue a self-defense theory was reasonable, no

15   evidence existed to warrant a misdemeanor battery conviction, and *Sharma* had not yet been decided

16   when the jury was instructed on aiding and abetting.

17   1. Legal Standard

18   Ineffective assistance of counsel claims are governed by the two-part test announced in

19   *Strickland v. Washington,* 466 U.S. 668 (1984).  In *Strickland*, the Supreme Court held that a petitioner

20   claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made

21   errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth

22   Amendment, and (2) that the deficient performance prejudiced the defense. *Williams v. Taylor,* 529 U.S.

23   362, 390-91 (2000) (citing *Strickland,* 466 U.S. at 687).  To establish ineffectiveness, the defendant must

24   show that counsel's representation fell below an objective standard of reasonableness.  *Id.*  To establish

25   prejudice, the defendant must show that there is a reasonable probability that, but for counsel's

26   unprofessional errors, the result of the proceeding would have been different.  *Id.*  A reasonable

probability is "probability sufficient to undermine confidence in the outcome." *Id.* Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland,* 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id.*

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an 'objective standard of reasonableness,'. . . 'under prevailing professional norms.'" *Rompilla v. Beard,* 545 U.S. 374, 380 (2005) (quotations omitted). If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v. Gentry,* 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

The United States Supreme Court recently described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011) (quoting *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1413 (2009)). The Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . . through the 'deferential lens of § 2254(d).'" *Id.* at 1403 (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Cullen*, 131 S.Ct. at 1398-1401.

### 2. Self-Defense Theory

Petitioner argues that his trial-counsel's decision to pursue a self-defense theory was unreasonable because self-defense had no reasonable probability of success at trial. Additionally, petitioner argues that to support the self-defense theory, he was required to testify and admit that he had struck Resendiz three times. According to petitioner, because trial counsel failed to challenged the conspiracy to commit battery, he was unable to defend against the second-degree murder charge.

34

In addressing this argument, the Nevada Supreme Court stated:

> First, Boice argues that trial counsel was ineffective for unreasonably pursuing a self-defense theory. He contends that our affirmance in his direct appeal establishes that self-defense is not available in a felony murder prosecution, and that counsel was thus per se ineffective for pursuing it. Aside from this reference to our unpublished order resolving his direct appeal, Boice cites no authority for this argument, and we are not aware of any. In addition, self-defense was an available defense to battery with the use of a deadly weapon, which was a separate charge as well as the basis for the felony murder and conspiracy charges. These charges could have been defeated had counsel convinced the jury that Boice should be absolved of battery with the use of a deadly weapon based on self-defense. Accordingly, we conclude that the district court did not err in rejecting this claim.

(Exhibits to First Am. Pet. Ex. 308 at 2.)

Under Nevada law, self-defense is an available defense to battery. *See Rosas v. State*, 147 P.3d 1101 (Nev. 2006). Because battery with use of a deadly weapon served as the predicate offense to second-degree felony murder and was the underlying unlawful act to the conspiracy charge, it was a reasonable tactic for trial counsel to pursue. Had the self-defense theory proven successful, petitioner may have been acquitted of several offenses of which he was convicted. Petitioner contends, nonetheless, that a self-defense theory was not viable because the jury was instructed that self-defense is not available to the original aggressor in homicide cases allegedly committed on a theory involving felony murder. This argument is unavailing because it appears from the record that trial counsel's theory was that Resendiz was the initial aggressor because he shouted that he would shoot petitioner and his friends and simultaneously reached backward, possibly for a weapon. Based on this version of events, to which petitioner testified at trial, he was not the original aggressor and responded to Resendiz's words and actions to protect himself.

Moreover, petitioner fails to show that he was prejudiced by counsel's decision to pursue a self-defense theory. Petitioner states that because of the self-defense theory counsel allowed him to take the stand and admit that he struck the victim at least three times with a long stick. The prejudice from this admission, however, is minimal when viewed in the context of the trial as a whole. Several witnesses testified that petitioner entered the room and struck Resendiz. (Exhibits to First Am. Pet. Ex. 226 at 30-

40, Ex. 228 at 19-20.)  Carolee Simpson testified that the weapons carried by petitioner and his friends were made of metal.  (*Id*. Ex. 225 at 34, 37)   If anything, petitioner's testimony mitigated Simpson's testimony because he indicated that his weapon was made of wood, not metal.  In sum, trial counsel's performance did not fall below an objective standard of reasonableness under prevailing norms. Additionally, petitioner fails to satisfied the prejudice prong of the *Strickland* analysis, as he has not shown that, but for the alleged errors of counsel, the outcome of the proceeding would have been different.

Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  This court denies relief on this aspect of ground fourteen.

### 3.  Lesser-Included Instruction

Petitioner claims that trial counsel was ineffective for failing to request a jury instruction on misdemeanor battery as a lesser-included offense of felony battery with use of a deadly weapon. Petitioner claims that trial counsel testified at the evidentiary hearing before the state trial court that in preparing for trial there had been no discussion about preparing a jury instruction and verdict for misdemeanor battery and he wished he had done that.  Petitioner contends that because the self-defense theory was so problematic, a lesser-included instruction was necessary to avoid a serious felony conviction.

The Nevada Supreme Court ruled as follows in response to this claim:

> Third, Boice argues that trial counsel was ineffective for failing to request a jury instruction on misdemeanor battery as a lesser-included offense of felony battery with the use of a deadly weapon.  "A lesser included offense is included in a greater offense 'when all of the elements of the lesser offense are included in the elements of the greater offense.'" NRS 200.481, the battery statute, makes clear that misdemeanor battery is a lesser-included offense of felony battery.  Boice would have been entitled to a misdemeanor battery instruction "as long as there [was] some evidence to support it."  Our review of the record indicates there was no evidence reasonably supporting misdemeanor battery in this case.  Boice used an

1    allegedly deadly weapon in the battery, which under NRS 200.481(2)(e) is
2    a category B felony.  Even if Boice's stick could not be considered a deadly
     weapon, the battery victim clearly suffered substantial bodily harm in the
3    attack, including a number of skull fractures that led to his death.  Where no
     deadly weapon is used but the battery causes substantial bodily harm, NRS
4    200.481(2)(b) makes the offense a category C felony.  Because Boice used
     a deadly weapon and/or the battery caused substantial bodily harm, there
5    was no evidence that Boice only committed a misdemeanor battery.  We
     therefore concluded that the district court did not err in rejecting this claim.

6    (Exhibits to First Am. Pet. Ex. 308 at 3-4) (footnotes omitted).

7         At least one court has concluded that counsel provides ineffective assistance when his or her

8    "errors with the jury instructions were not a strategic decision to forego one defense in favor of another"

9    but were "the result of a misunderstanding of the law."  *United States v. Span*, 75 F.3d 1383, 1390 (9th

10   Cir. 1996).  However, even assuming, without deciding, that counsel was ineffective for failing to

11   request a misdemeanor battery instruction, petitioner fails to show that counsel's deficient performance

12   prejudiced his defense.  Under Nev. Rev. Stat. § 200.482(2)(a), misdemeanor battery requires that the

13   battery "is not committed with a deadly weapon, *and* no substantial bodily harm to the victim results."

14   (emphasis added).  The statute is written in the conjunctive and requires both that the battery be

15   committed without a deadly weapon and that no substantial bodily harm results.  Although the evidence

16   may have supported a conclusion that the battery was not committed with a deadly weapon, no

17   reasonable argument exists that Resendiz did not sustain substantial bodily harm.  His injuries resulting

18   from the attack were so serious that they resulted in his death.  Thus, even if trial counsel had proposed

19   a misdemeanor battery instruction, such an instruction would not have been proper because no evidence

20   supported the conclusion that Resendiz did not suffer substantial bodily harm.   Accordingly, even if

21   counsel performed ineffectively by failing to request a misdemeanor battery instruction, petitioner fails

22   to satisfy the prejudice prong of the *Strickland* analysis, as he has not shown that, but for the alleged

23   errors of counsel, the outcome of the proceeding would have been different.

24        Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to,

25   or involved an unreasonable application of, clearly established federal law, as determined by the United

26   States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light

of the evidence presented in the state court proceeding.  This court denies relief on this aspect of ground

fourteen.[6]

### 4.  Jury Instructions Nineteen and Thirty-Six

Petitioner claims that trial counsel was ineffective for failing to object to the jury instructions

addressing the mental state of aiding and abetting.

In addressing this argument, the Nevada Supreme Court held the following:

> Fourth, Boice argues that trial counsel was ineffective for failing to object to jury instructions 19 and 36 becuase they did not properly instruct the jury on aiding and abetting.  In <u>Sharma v. State</u>, [56 P.3d 868 (Nev. 2002),] we held that "in order for a person to be held accountable for the specific intent crime of another under an aiding and abetting theory of principal liability, the aider and abettor must have knowingly aided the other person with the intent that the other person commit the charged crime.  Of the three charges Boice was convicted of, only murder is a specific intent crime.  Thus, the instruction was proper for the general intent charges against Boice.  Further, because <u>Sharma</u> was not decided until after Boice's trial, the instructions were proper at the time of trial, and counsel was not deficient for failing to object to them based on <u>Sharma.</u>

(Exhibits to First Am. Pet. Ex. 308 at 4-6) (footnotes omitted).

Petitioner's jury trial commenced on August 26, 2002, and concluded on September 18, 2002.

*Sharma* was decided on October 31, 2002.  Thus, trial counsel was not ineffective for failing to object

to the aiding and abetting jury instructions because *Sharma* had not yet been decided and the instructions

were in accordance with the then-existing state of the law.  Petitioner has failed to meet his burden of

proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly

established federal law, as determined by the United States Supreme Court, or that the ruling was based

on an unreasonable determination of the facts in light of the evidence presented in the state court

proceeding.  This court denies relief on this aspect of ground fourteen.

### L.  Ground Fifteen

In ground fifteen, petitioner claims that the trial court erred by rejecting his request for a new trial

---

[6]  It does not appear from his papers that petitioner is arguing that trial counsel should have requested a misdemeanor battery instruction regarding the battery of Lainez.  However, to the extent that he is, this claim appears unexhausted.

based on newly discovered evidence, and consequently, his conviction and sentence are invalid under

the Fifth and Fourteenth Amendments to the United States Constitution.  Petitioner argues that three of

his co-defendants, Lew Dutchy, Clint Malone, and Jessica Evans, who were not tried at the same time

as him and would have exercised their Fifth Amendment rights, were able to provide testimony to

corroborate his defense.

Respondents argue that the evidence to which petitioner points is not "newly discovered," and

that, even if it were considered, it would not produce a different result at trial.

### 1. Legal Standard

State court rulings do not give rise to cognizable habeas claims unless the ruling violated

petitioner's due process right to a fair trial. *Estelle*, 502 U.S. at 70. "Under the Due Process Clause of

the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental

fairness." *California v. Trombetta*, 467 U.S. 479, 485 (1984).  Under "sufficiently egregious"

circumstances, the misapplication of state law may violate federal due process safeguards.  *Pulley v.*

*Harris*, 465 U.S. 37, 41 (1984); *see Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Thus, federal habeas

courts are "limited, at most, to determining whether the state court's finding was so arbitrary or

capricious as to constitute an independent due process" violation. *Jeffers*, 497 U.S. at 780.

### 2. Discussion

Petitioner argues that the testimony of Dutchy, Malone, and Evans at the evidentiary hearing on

his post-conviction petitioner established, among other things, that Dutchy did not see him hit Resendiz,

that Resendiz had shouted that he would shoot before he entered the room, and that Contreras was hitting

both Resendiz and Lainez with a baseball bat.  Petitioner asserts that this testimony would have called

into question the testimony of Simpson and Contreras and would have presented a different picture for

the jury regarding the circumstances that caused Boice and others to enter the room.

In addressing this argument, the Nevada Supreme Court stated:

> Boice also argues that the district court erred by rejecting the request
> in his petition for a new trial on newly discovered evidence.  This court
> reviews a district court's decision to grant or deny a new trial request based
> on newly discovered evidence for abuse of discretion.  A defendant seeking

a new trial based on newly discovered evidence must show that the evidence is

> "newly discovered; material to the defense; such that even with the exercise of reasonable diligence it could not have been discovered and produced for trial; non-cumulative; such as to render a different result probable upon retrial; not only an attempt to contradict, impeach, or discredit a former witness, unless the witness is so important that a different result would be reasonably probable; and the best evidence the case admits."

Even assuming Boice could successfully meet the other elements of this test, we are not persuaded that the evidence Boice now raises would render a different result probable.  Boice's alleged newly discovered evidence consists of the evidentiary hearing testimony of Lew Dutchy, Clint Malone, and Jessica Evans, each of whom Boice asserts was subpoenaed by defense counsel for Boice's trial, invoked their Fifth Amendment rights and refused to testify, and subsequently pleaded guilty to various charges in relation to these crimes.

In most relevant part, Boice asserts that Dutchy would testify that he saw Julian Contreras strike the allegedly fatal blows to the victim's head and that Dutchy and Boice were outside the room when Dutchy heard the victim scream as if he were hurt badly; that Malone would testify that he saw Contreras striking the victim but could not tell if Boice struck the victim as well; and that Evans' testimony would establish that Boice could not have been in the room where the victim was beaten for very long.

While these statements suggest that Boice may not have struck the fatal blows, there is no reasonable probability that the testimony of Dutchy, Malone, and Evans would produce a different result at trial.  We note that, according to Boice's briefs, the medical examiner testified that the weapon Boice claimed he struck the victim with probably did not cause the fatal blows.  Even if Boice did not testify at a new trial that he struck the victim three times in the head with a wooden stick, Dutchy's testimony at the hearing established that Boice was armed with a wooden stick and that he "handled up" the victim; Malone testified that he was not paying attention and so could not tell whether Boice struck the victim; Evans' testimony still placed Boice in the room.  None of this testimony persuades us that a different result would be probable if Boice were retried for murder based on the theory that Boice directly caused the victim's death or serious injury or aided or abetted it.  Therefore, we concluded the district court did not abuse its discretion in denying Boice's request for a new trial.

(Exhibits to First Am. Pet. Ex. 308 at 8-10) (footnotes omitted).

This court concludes that the state court's denial of a new trial based on the testimony ellicited

at the evidentiary hearing on the post-conviction petition is not so arbitrary or capricious as to constitute

an independent due process violation.  The factual findings of the state court are presumed correct.  28

40

U.S.C. § 2254(e)(1). Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  This court will deny habeas relief as to ground fifteen.

**IV.  Certificate of Appealability**

In order to proceed with an appeal, petitioner must receive a certificate of appealability.  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1;  *Allen v. Ornoski,* 435 F.3d 946, 950-51 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001).   Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability.  *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).   "The petitioner must demonstrate that reasonable jurists would find the district court;s assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484).   In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.*  This court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard.  The court will therefore deny petitioner a certificate of appealability.

**V.  Conclusion**

**IT IS THEREFORE ORDERED** that respondents' motion for leave to file excess pages (ECF No. 74) is **GRANTED.**

**IT IS FURTHER ORDERED** that the first amended petition for a writ of habeas corpus (ECF No. 20) is **DENIED IN ITS ENTIRETY**.

**IT IS FURTHER ORDERED** that the clerk **SHALL ENTER JUDGMENT ACCORDINGLY.**

1      **IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF**

2  **APPEALABILITY.**

3

      DATED this 26th day of September 2011.

4

5                      *Edward C. Reed.*

                       UNITED STATES DISTRICT JUDGE